Elizabeth H. SHELEY, Appellant,

v.

ALASKA BAR ASSOCIATION, Appellee.

No. 5148.

Supreme Court of Alaska.

Oct. 16, 1980.

Clark Reed Nichols, Anchorage, for appellant.

William W. Garrison, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This appeal concerns the constitutionality of Alaska Bar Rule 2(1)(e), which requires an applicant for the Alaska bar examination to establish domicile in Alaska at least thirty days before the first day upon which the examination is to be given.[1] Elizabeth Sheley applied for permission to sit for the February, 1980, examination, but the Board of Governors of the Alaska Bar Association (ABA) denied her application based on her representation that she could not meet the thirty–day residency requirement. Sheley appeals the Board's decision on the grounds that the residency requirement contained in Bar Rule 2(1)(e) violates her rights under the equal protection clause of the Alaska Constitution,[2] and the privileges and immunities clause of the United States Constitution.[3]

Sheley graduated from the University of Texas law school in May, 1978. She has been admitted to practice law in the states of Washington and Texas. She is presently serving as a law clerk for a federal district court judge in Texas. Since she planned to move to Alaska in June, 1980, and establish a law practice, she applied to take the February bar exam. She notified the Alaska Bar Association that she would be unable to meet the thirty–day residency requirement imposed by Bar Rule 2(1)(e) because she was employed as a law clerk and could not move to Alaska until after her clerkship. She also stated that she did "not have the financial resources to take

the July bar because that in effect would make me unable to practice [law] and earn a living for at least four months." Based on her representation concerning the residency requirement, the Board of Governors denied her application to take the examination because she could not meet the residency requirement of Bar Rule 2(1)(e).

On January 28, 1980, Sheley appealed to this court, and filed a motion to allow her to sit for the examination pending the determination of the merits of her appeal. This motion was granted, and on February 20, 1980, we ordered the ABA to permit Sheley to take the examination. This opinion deals with Sheley's contention that the thirty–day residency requirement of Bar Rule 2(1)(e) violates the privileges and immunities clause of article IV, section 2, of the United States Constitution.[4]

The privileges and immunities clause provides that "[t]he citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." In *Toomer v. Witsell*, 334 U.S. 385, 395–96, 68 S.Ct. 1156, 1161–62, 92 L.Ed. 1460, 1471 (1948), the United States Supreme Court explained the purposes of the clause:

> The primary purpose of this clause, like the clauses between which it is located—those relating to full faith and credit and to interstate extradition of fugitives from justice—was to help fuse into one Nation a collection of independent, sovereign States. It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy. For protection

1. Alaska Bar Rule 2 provides in part:
   *Section 1.* Every applicant for examination shall

   .    .    .    .    .

   (e) Establish domicile in the State of Alaska at least 30 days prior to the first day upon which the bar examination is to be given. Domicile may be shown for purposes of taking the bar examination by physical presence in Alaska for the 30–day period prior to the first day of the examination.

2. The Alaska Const., art. I, § 1, provides in part:
   *Inherent Rights.* This constitution is dedicated to the principles ... that all persons

   are equal and entitled to equal rights, opportunities, and protection under the law; ...

3. The United States Const., art. IV, § 2, provides in part:
   The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.

4. Since we conclude that Bar Rule 2(1)(e) violates the privileges and immunities clause, we need not determine if it is also violative of equal protection. *See Hicklin v. Orbeck*, 437 U.S. 518, 534 n.19, 98 S.Ct. 2482, 2491 n.19, 57 L.Ed.2d 397, 410 n.19 (1978).

of such equality the citizen of State A was not to be restricted to the uncertain remedies afforded by diplomatic processes and official retaliation. Indeed, without some provision of the kind removing from the citizens of each State the disabilities of alienage in the other States, and giving them equality of privilege with citizens of those States, the Republic would have constituted little more than a league of States; it would not have constituted the Union which now exists. *Paul v. Virginia*, 8 Wall (U.S.) 168, 180, 19 L.Ed. 357, 360 (1868).

In line with this underlying purpose, it was long ago decided that one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State. In short, the clause seeks to prevent discrimination against nonresidents,[5] to fur-

ther the concept of federalism,[6] and to create a national economic unit.[7]

■ Although the clause speaks in absolute terms by stating that noncitizens shall be entitled to "all" privileges and immunities, it does not preclude some disparity of treatment between residents and nonresidents.[8] The contours of the clause have not been precisely defined, "[p]erhaps because of the imposition of the Fourteenth Amendment upon our constitutional consciousness and the extraordinary emphasis that the Amendment received."[9] It is clear, however, that the clause does not protect some activities which a state may control as a direct adjunct of its sovereignty,[10] nor does it protect activities which are not "fundamental rights,"[11] *i. e.*, those "basic and essential activities, interference with which would frustrate the purposes of the formation of the Union."[12]

■ We agree with the New York Court of Appeals,[13] and the commentators,[14] that

**5.** *See* Note, *Domicile Preferences in Employment: The Case of Alaska Hire*, Duke L.J. 1069, 1080 (1978) (hereafter cited as *Domicile Preferences*).

**6.** *Hicklin v. Orbeck*, 565 P.2d 159, 173 (Alaska 1977) (Boochever, C. J., dissenting); Simson, *Discrimination Against Nonresidents and the Privileges and Immunities Clause of Article IV*, 128 U.Pa.L.Rev. 379, 384 (1979) (hereafter cited as Simson).

**7.** *See* Note, *A Constitutional Analysis of State Bar Residency Requirements under the Interstate Privileges and Immunities Clause of Article IV*, 92 Harv.L.Rev. 1461, 1470 (1979) (hereafter cited as *Residency Requirements*).

**8.** *Hicklin v. Orbeck*, 437 U.S. 518, 525, 98 S.Ct. 2482, 2487, 57 L.Ed.2d 397, 404 (1978); *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948); *Lynden Transport, Inc. v. State*, 532 P.2d 700, 709 (Alaska 1975); *Gordon v. Comm. on Character and Fitness*, 48 N.Y.2d 266, 397 N.E.2d 1309, 1312 (1979). *See generally* Alleyne, *Constitutional Restraints on the Preferential Hiring Of Alaskan Residents for Oil Pipeline Construction*, 2 U.C.L.A.–Alaska L.Rev. 1, 3 (1972) (hereafter cited as Alleyne); Simson, *supra* note 5, at 386–89.

**9.** *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 380, 98 S.Ct. 1852, 1858, 56 L.Ed.2d 354, 363 (1978). *See also Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 644 & n.9, 397 N.E.2d 1309, 1312 & n.9 (1979).

**10.** *See Residency Requirements, supra* note 6, at 1476–77. *See generally Chimento v. Stark*, 353 F.Supp. 1211 (D.N.H.), *aff'd mem.*, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973).

**11.** *Baldwin v. Fish & Game Comm'n*, 436 U.S. 371, 388, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354, 368 (1978). *See The Supreme Court, 1977 Term*, 92 Harv.L.Rev. 57, 75 (1978). The term "fundamental rights" as used by the United States Supreme Court is ambiguous. Its meaning varies depending upon which constitutional provision is under review. *See Hicklin v. Orbeck*, 565 P.2d 159, 166, 168 & n.16 (Alaska 1977), *rev'd on other grounds*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978); *Residency Requirements, supra* note 6, at 1466; *Domicile Preferences, supra* note 4, at 1073. Because the Supreme Court uses the term to describe those rights that are protected by the privileges and immunities clause as well as the equal protection clause, we will adopt this terminology.

**12.** *Baldwin v. Montana Fish & Game Comm'n*, 436 U.S. 371, 387, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354, 368 (1978).

**13.** *Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 644–45, 397 N.E.2d 1309, 1312–13 (1979).

**14.** *See* Simson, *supra* note 5, at 389–92; *Residency Requirements, supra* note 6, at 1468–76.

the practice of law by qualified persons is a "fundamental right" triggering scrutiny under the privileges and immunities clause. The United States Supreme Court has recognized the fundamental right to engage in "common callings"[15] and to pursue "ordinary livelihoods."[16] The Court has protected, under the privileges and immunities clause, the right to fish,[17] to market goods,[18] and to be employed in jobs arising from state oil and gas leases.[19] Assuming that there was once a status distinction between engaging in common occupations and in professional pursuits,[20] it is not of constitutional significance.[21] The practice of law is like any other species of trade or commerce. In *Corfield v. Coryell*, 6 Fed.Cas.No. 3,230 p. 546 (C.C.E.D.Pa.1823), the first major case concerning the clause, Justice Washington's list of fundamental rights, quoted by the Court in *Baldwin v. Montana Fish & Game Commission*, 436 U.S. 371, 384, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354, 365 (1978), includes professional pursuits.

> [Fundamental rights include the] right of a citizen of one state to pass through, or to reside in any other state, for purposes of trade, agriculture, *professional pursuits*, or otherwise; to claim the benefit of the writ of habeas corpus, to institute and maintain actions of any kind in the courts of the state; to take, hold and dispose of property, either real or personal[.]

*Corfield v. Coryell*, 6 Fed.Cas.No. 3,230 pp. 546, 552 (C.C.E.D.Pa.1823) (emphasis added).

■ The right to practice law is a "fundamental right" calling for scrutiny under the privileges and immunities clause. The question for decision is whether Bar Rule 2(1)(e) can withstand that scrutiny. The thirty–day residency requirement of the rule clearly discriminates against nonresidents, because they are denied the opportunity to take the bar examination and, thus, precluded from practicing law. All members of this class are excluded from the examination, regardless of being otherwise qualified. Such discrimination is permissible only if the test first enunciated in *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), which was confirmed in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), is satisfied.

> [The privileges and immunities clause] bar[s] discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures.[22]

These principles were recently applied to the statute commonly referred to as "Alaska Hire," which required private employers to give preference to Alaska residents on jobs arising from oil and gas leases. AS

---

**15.** *Toomer v. Witsell*, 334 U.S. 385, 403, 68 S.Ct. 1156, 1165, 92 L.Ed. 1460, 1474 (1948).

**16.** *Id.* at 408, 68 S.Ct. at 1168, 92 L.Ed. at 1477 (Frankfurter, J., concurring).

**17.** *Toomer v. Witsell*, 334 U.S. 385, 402, 68 S.Ct. 1156, 1165, 92 L.Ed. 1460, 1474 (1948).

**18.** *Ward v. Maryland*, 79 U.S. (12 Wall) 418, 20 L.Ed. 449 (1871).

**19.** *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

**20.** *See Gordon v. Comm. on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979); *Residency Requirements, supra* note 6, at 1473.

**21.** *Id.*

**22.** *Toomer v. Witsell*, 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, 1471 (1948) (footnotes omitted).

38.40.030. One of the criteria for qualifying as a "resident" was a requirement of physical presence in Alaska for one year. AS 38.40.090(1). In *Hicklin v. Orbeck*, 565 P.2d 159, 162–71 (Alaska 1977), this court unanimously held that the one–year durational residency or waiting period requirement was unconstitutional and, further, that a durational residency requirement in excess of thirty days was also unconstitutional.

█ But the requirement of residency was not entirely done away with. A majority of the court held that the other indicia of residence contained in AS 38.40.090(1),[23] including a requirement of domicile,[24] were not unconstitutional. Thus, under this view, preference in hire would still be given residents of Alaska–even though they were residents for only a brief period of time. Two members of the court disagreed. It was their opinion that there was no valid basis for the distinction drawn between residents and nonresidents by the Alaska Hire law, regardless of length of residency, and that to draw such a distinction would violate the privileges and immunities clause of article IV, section 2, of the federal constitution.[25]

Hicklin and the other appellants brought an appeal to the Supreme Court of the United States. This appeal was not on the basis of the one–year durational residency requirement. This court had declared that invalid. Rather, the appeal was directed to this court's holding, in a three–to–two decision, that Alaska could impose a simple residency requirement–without respect to the time of such residency–as a condition of employment in the oil and gas industry in Alaska.

The Supreme Court of the United States first determined that the right to work in the oil and gas industry in Alaska was fundamental right. *Hicklin v. Orbeck*, 437 U.S. 518, 524–26, 98 S.Ct. 2482, 2486–87, 57 L.Ed.2d 397, 403–05 (1978). The Court held that Alaska's interests in upgrading human resources and reducing unemployment in the state were undoubtedly legitimate. But the Court determined that the statute violated the privileges and immunities clause for two reasons. First, there was no substantial reason for the discrimination, i. e., there was nothing to indicate that nonresidents were "a peculiar source of the evil the statute was enacted to remedy,"–namely, Alaska's unique unemployment problem. *Id.* at 526–27, 98 S.Ct. at 2487–88, 57 L.Ed.2d at 405. Second, there was no "substantial relationship" between the means chosen by the state and the end to be achieved, i. e., the reduction of unemployment in Alaska. The discrimination against nonresidents, the Supreme Court held, did not bear a substantial relationship to the "evil" of a high rate of unemployment, because a preference for employment extended to all Alaskans, regardless of their qualifications.[26] *Id.* at 527–28, 98 S.Ct. at 2488, 57 L.Ed.2d at 405–06.

**23.** AS 38.40.090(1) provides:

(1) "resident" means a person who

(A) except for brief intervals, military service, attendance at an educational or training institution, or for absences for good cause, is physically present in the state for a period of one year immediately before the time his status is determined;

(B) maintains a place of residence in the state;

(C) has established residency for voting purposes in the state;

(D) has not, within the period of required residency, claimed residency in another state; and

(E) shows by all attending circumstances that his intent is to make Alaska his permanent residence;

**24.** A domiciliary must be physically present and have the subjective intent to remain indefinitely. *See Residency Requirements, supra* note 6, at 1481; AS 38.40.090(1).

**25.** *Hicklin v. Orbeck*, 565 P.2d 159, 171–74 (Alaska 1977) (dissenting opinion of Boochever, C. J., joined by Rabinowitz, J.).

**26.** The ABA argues that *Hicklin* is not applicable because *Hicklin* struck down a nondurational residency requirement, not a durational residency requirement as found in Bar Rule 2(1)(e). Although it is true that the Court did not consider on appeal the durational residency requirement of thirty days, this does not mean that the *Hicklin* analysis is inapplicable. Indeed, rather than alleviating constitutional problems, durational residency requirements

In the case at hand, the ABA asserts that there is a substantial reason for requiring a bar applicant to be a resident of Alaska for thirty days prior to the date of the examination. That reason, the ABA contends, is to afford the ABA with a reasonable opportunity to investigate an applicant's academic fitness and moral character. Admittedly, this reason furthers a legitimate state interest.[27] *Gordon v. Committee on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 645–46, 397 N.E.2d 1309, 1313–14 (1979).

But that alone is not sufficient. There must be a "substantial relationship" between the means chosen by the Bar Rule and the legitimate objectives to be achieved. *Hicklin v. Orbeck*, 437 U.S. at 526–27, 98 S.Ct. at 2487–88, 57 L.Ed.2d at 405. The discrimination which the rule works against nonresidents does not bear a substantial relationship to the end sought by the ABA. This is so because there are less restrictive means, other than residency for a designated period of time in Alaska, that would achieve the legitimate objectives. *See Hicklin*, 437 U.S. at 528, 98 S.Ct. at 2488, 57 L.Ed.2d at 406. For example, if the bar applicant is a nonresident (and that is at whom the rule is aimed), information concerning fitness and character will be found, not in Alaska, but outside of the state. As was stated in *Keenan v. Board of Law Examiners*, 317 F.Supp. 1350 (E.D.N.C. 1970):

> [T]he reason given for a period of residence prior to admission is that it will thus prevent an unknown lawyer of bad moral or professional character from gaining admission, because during this period he will have an opportunity to establish his good moral character where he will be under the observation of local people. Practically this is of little or no protection to the state and the bar. A mere year of residence does not go far to establish a man's character and only careful investigation at the applicant's former place of residence is apt to disclose those habits or qualities which would make him an undesirable member of the local bar.[28]

*Id.* at 1359, *quoting* Horack, *Trade Barriers to Bar Admissions*, 28 Journal of the American Judicature Society 102, 103 (1944). In addition, the ABA can avail itself of the nationwide investigatory service of the National Conference of Bar Examiners as a less restrictive means.[29]

The ABA points to Bar Rule 1(3),[30] which provides that an applicant may be required to appear before the Board of Governors of the Alaska Bar Association, or before a committee or master appointed by the president of the Board, in order to furnish supplemental information or evidence as may be required. It follows from this rule, the ABA argues, that the applicant's presence

---

exacerbate them because such requirements discriminate against short–term residents as well as nonresidents. Thus, they create equal protection problems not generated by simple residency requirements. Merely because such durational residency requirements discriminate against both groups does not place the requirements beyond the scope of the privileges and immunities clause as defined in *Hicklin*. Simson, *supra* note 5, at 389 n.47.

27. EC 1–2 of the Alaska Code of Professional Responsibility provides, in part: "The public should be protected from those who are not qualified to be lawyers by reason of a deficiency in education or moral standards or of other relevant factors but who nevertheless seek to practice law."

28. In *Keenan v. Bd. of Law Examiners*, 317 F.Supp. 1350 (E.D.N.C.1970), the district court held that the bar rule requiring a person to have been a bona fide citizen and resident of

North Carolina for twelve months before he or she can take the bar examination is unconstitutional as imposing a burden on the right to interstate travel without being necessary to promote a compelling state interest, and denying equal protection of the laws.

29. *See Keenan v. Bd. of Law Examiners*, 317 F.Supp. 1350, 1360 (E.D.N.C.1970); *Residency Requirements, supra* note 6, at 1481.

30. Alaska Bar R. 1(3) provides in relevant part: The Board or any member thereof may require an applicant to appear before the Board, a committee or a master appointed by the President for such purpose, at such times and places as may be required, for oral examination and to furnish any such supplemental information or evidence in such form as may be required.

for thirty days in Alaska is necessary. Assuming that such an appearance substantially furthers the purpose of insuring academic fitness and character, the residency requirement is not closely related to the objectives sought by the ABA. The mere possibility of an appearance before the Board of Governors, a committee, or a master, does not justify requiring the applicant's presence in Alaska thirty days prior to the date of the examination. As a less restrictive means to accomplish the objectives sought, the ABA could simply require the applicant to make herself available for interview at a reasonable time, perhaps even before a master outside of Alaska. This could also be done following the examination, since the results are not known for a period of three or four months after the examination has been given.

Our holding is not without precedent. Recently the highest court of the State of New York considered a similar issue in *Gordon v. Committee on Character & Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979). In *Gordon*, the appellant challenged the constitutionality of a rule providing that a person may not be admitted to the bar unless he furnishes proof "that he has been an actual resident of . . . New York for six months immediately preceding the submission of his application for admission to practice." The appellant took and passed the New York bar examination. Before he was notified of the results, he was transferred to North Carolina by his employer, where he then resided. In view of his North Carolina residence and the above rule, the bar committee deferred action on his application. Subsequently, he challenged the residency requirements of the rule. Relying on *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), the *Gordon* court found that the rule violated the privileges and immunities clause of article IV of the federal constitution. The court stated:

It is undisputed that New York has a constitutionally permissible interest to assure that those admitted to the Bar possess knowledge of the law as well as the character and fitness requisite for an at-torney. But appellant has not been excluded from membership in the Bar due to any challenge to his knowledge of the law of this State or to his good character. Rather, the exclusion is based solely upon his residence in North Carolina—a criterion which serves no purpose other than to deny persons the right to pursue their professional career objectives because of parochial interests.

422 N.Y.S.2d at 645, 397 N.E.2d at 1313 (citations omitted). We are in agreement with the rationale of the *Gordon* court.

The efforts of the ABA to insure that bar applicants are morally and academically qualified to practice law are commendable. In pursuit of those goals, however, the ABA may not abridge the applicants' constitutional rights. We fail to see how this discrimination against nonresidents furthers such goals. In reality, Alaska Bar Rule 2(1)(e) may well deny licenses to applicants who are eminently qualified for admission by effectively deterring many of them from coming to Alaska. We believe that the bar residency requirement is the sort of economic protectionism that the privileges and immunities clause of the United States Constitution was designed to prevent.

The decision of the Alaska Bar Association Board of Governors denying Elizabeth Sheley's application to take the bar examination without satisfying the thirty–day residency requirement is REVERSED.

BOOCHEVER, J., not participating.