Berney L. STRAUSS, Plaintiff,

v.

ALABAMA STATE BAR; Edward P. Turner, Jr.; P. Richard Hartley; Harry W. Gamble, Jr.; Charles R. Adair; Walter P. Crownover; H. Wayne Love; William D. Scruggs, Jr.; Warren B. Lightfoot; A. Stewart O'Bannon, Jr.; Joe C. Cassady; Ben H. Harris, Jr.; Joel P. Robinson, Jr.; Albert W. Copeland; Ludger D. Martin; Richard S. Manley; Jere C. Segrest; Broox G. Garrett; W. O. Kirk, Jr.; Nelson Vinson; Bob Faulk; Louis B. Lusk; J. Don Foster; T. Reuben Bell; John David Knight; Edwin C. Page, Jr.; Robert M. Harper; John F. Proctor; William Bruce Sherrill; Harold Albritton; Oliver P. Head; J. Gorman Houston, Jr.; Gary C. Huckaby; Gorman R. Jones, Jr.; William B. Matthews; A. Philip Reich, III; Charles E. Robinson; Robert Straub; H. Neil Taylor, Sr.; and Ted Taylor, in their official capacity as members of the Board of Commissioners of the Alabama State Bar; E. T. Brown, Jr., President of the Alabama State Bar; Harold V. Hughston, President-Elect of the Alabama State Bar; Jon H. Moores, Vice-President of the Alabama State Bar; and Reginald T. Hamner, Secretary of the Alabama State Bar, Defendants.

Civ. A. No. CV 81–G–1041–S.

United States District Court,
N. D. Alabama, S. D.

Aug. 17, 1981.

Gould H. K. Blair, Birmingham, Ala., for plaintiff.

William H. Morrow, Jr., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This cause came before the court upon the verified complaint filed by the plaintiff in which he sought a preliminary injunction requiring the Alabama State Bar Association to allow him to take the July 1981 bar examination. He further requested a declaration that the residence requirement for taking the bar examination is unconstitutional, and a permanent injunction prevent-

ing the defendants from enforcing that provision. By order of this court entered July 16, 1981, a preliminary injunction issued, ordering the Alabama State Bar to allow the plaintiff to take the July 1981 examination.

At the preliminary injunction hearing, counsel for defendants admitted that the facts of the case are as set forth in the plaintiff's affidavit, that there was no need for further evidentiary hearing, and that the question to be decided was purely a question of law. The plaintiff subsequently filed a motion for summary judgment and it is upon that motion that the court now acts.

■ The uncontroverted facts of this case are relatively simple. Mr. Strauss, a native of Mobile, Alabama, attended Tulane Law School. There he studied the common-law curriculum with a view toward returning to Mobile to practice law, and, during the summers, clerked for Mobile firms. His senior year, Mr. Strauss applied and was certified to take the Alabama bar exam by the Committee on Character and Fitness. Mr. Strauss, however, accepted employment with the firm of Phelps, Dunbar, Marks, Claverie & Sims in New Orleans, and therefore withdrew his application for the Alabama bar examination. Subsequently, Mr. Strauss was admitted to the bar of the Supreme Court of Louisiana and has practiced law with the Phelps firm for the past three years.

Desiring to practice law in his home state, Mr. Strauss again made application to take the Alabama bar examination administered July 27 through 29, 1981. In doing so, plaintiff was required to pay $310.00 for the privilege of sitting for the bar inasmuch as he was an out-of-state resident. In-state residents had to pay only $135.00 for the same privilege. Presumably, one of the reasons that the plaintiff had to pay more than twice as much as an Alabama resident for the same privilege is that out-of-state residents must fill out an additional application to the National Conference of Bar Examiners, a nationwide investigatory service which examines each applicant's qualifica-

tions and moral character. The Committee on Character and Fitness notified the plaintiff on or about July 2 that his application had been rejected because, as Mr. Strauss readily admits, he did not meet the residence requirement. As stated in Mr. Strauss's affidavit, to meet that residence requirement would have necessitated quitting his job in New Orleans, moving to Alabama for at least three weeks prior to the examination, and, since the results of the July examination would not be known for about four months, during which time he would be unable to practice law, would result in substantial loss of income.

In plaintiff's verified complaint, he alleges that he "has been damnified in the deprivation of his liberty interest without due process of law in manner aforesaid and has, moreover, been denied a privilege otherwise accorded a citizen of the State of Alabama by reason of his Louisiana residence." The plaintiff's claim arises under the privileges and immunities clause of Article IV, Section 2 of the United States Constitution and the fourteenth amendment thereto.

The residence requirement under attack constitutes a portion of Rule IVA of the Rules Governing Admission to the Alabama State Bar,[1] issued January 1981, and reads as follows:

### RULE IV

### WHO ENTITLED TO ADMISSION BY EXAMINATION

A. Prelegal Requirements.

Any citizen of the United States or resident alien who has filed a declaration of intent to become a United States citizen, and who is above the age of twenty-one years, having complied with the re-

quirements of Rule I hereof, and whose character and fitness have been approved by the Committee on Character and Fitness *and who is, at the date of filing of the application, a bona fide resident of the State of Alabama and is in fact a resident of the State of Alabama at the time of certification to sit for the bar examination*, is entitled to be examined for admission to the Bar of Alabama, at any examination held as herein prescribed, . . . .

(Emphasis added.) Since certification to applicants usually issues three weeks prior to commencement of the examination, the Committee on Character and Fitness established, as an administrative interpretation of Rule IV A, the requirement that an applicant actually reside in Alabama for three weeks prior to the examination. The plaintiff attacks both the residence requirement and the administrative interpretation. Having considered the rule, the arguments and submissions of counsel and applicable law, this court concludes that, for the reasons stated herein, the residence requirement violates the privileges and immunities clause of the United States Constitution and that the defendants should be enjoined from enforcing that requirement.

In support of the residence requirement, the defendants cite numerous cases from the early 1970's in which courts upheld residence requirements of as long as six months.[2] These cases predate those relied upon by the plaintiff and were decided before the Supreme Court decisions in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), and *Baldwin v. Montana Fish & Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), which revitalized the privileges and immunities clause.[3] The cases relied upon by plaintiff,

---

1. The Alabama State Bar Association is an integrated bar. The Board of Commissioners, pursuant to statutory authority, promulgated these Rules which were approved by the Supreme Court of Alabama, and have the force and effect of law. See, Alabama Code, 1975, § 34–3–43.

2. *E. g., Kline v. Rankin*, 352 F.Supp. 292 (N.D. Miss.1972); *Tang v. Appellate Division of New*

*York Supreme Court*, 373 F.Supp. 800 (D.C.N. Y.1972), aff'd 487 F.2d 138 (2d Cir. 1973), cert. den. 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Suffling v. Bondurant*, 339 F.Supp. 257 (D.C.N.M.1972), aff'd *Rose v. Bondurant*, 409 U.S. 1020, 93 S.Ct. 460, 34 L.Ed.2d 312 (1972).

3. These two Supreme Court decisions inspired a Harvard Law Review article which prophesied that the privileges and immunities clause

on the other hand, decided after the *Hicklin* and *Baldwin* cases and relying upon them, present more persuasive authority and support a conclusion that the Alabama residency requirement does not pass constitutional muster.

For example, in *Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979), a nonresident of New York successfully challenged the New York six-month residency requirement for applicants to the bar. In a well-reasoned opinion, the New York Court of Appeals relied on the recent *Hicklin* decision as well as the Supreme Court decisions in *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) (allowing advertising for attorneys) and in *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (allowing published legal fee schedules), in holding that the residency requirement in question violated the privileges and immunities clause. Based on those and other Supreme Court cases, the New York court concluded that "[i]t is now beyond dispute that the practice of law, despite its historical antecedents as a learned profession somehow above that of the common trades, is but a species of those commercial activities within the ambit of the [privileges and immunities] clause." 422 N.Y.S.2d at 644, 397 N.E.2d at 1312.

In reaching its decision, the *Gordon* court noted that the residence requirement worked an invidious discrimination against nonresidents inasmuch as an attorney admitted to practice in another state would have to move to New York and give up an established practice and residence for several months in order to fulfill the New York requirement. The residence rule also precluded one who desired to concentrate in a particular area of expertise from engaging in a multistate practice. 422 N.Y.S.2d at 644, 397 N.E.2d at 1312.

The New York court enunciated a test consisting of two distinct hurdles which the discriminatory restrictions must surmount in order to stand. First, the governmental interest asserted to justify the discrimination must undergo careful examination to determine whether such interest is substantial, "that is, whether 'non-citizens constitute a peculiar source of the evil at which the statute is aimed.'" 422 N.Y.S.2d at 645, 397 N.E.2d at 1313, *quoting Toomer v. Witsell*, 334 U.S. 385, 398, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460 (1948). If nonresidents do in fact constitute a problem which the state legitimately may address, the question then becomes "whether the means adopted to achieve that goal are narrowly drawn and are the least restrictive alternatives available (*Hicklin v. Orbeck*, 437 U.S. 518, 528, 98 S.Ct. 2482 [2488], 57 L.Ed.2d 397, *supra*)." 422 N.Y.S.2d at 645, 397 N.E.2d at 1313.

Although a state has a constitutionally permissible interest in determining that those admitted to its bar possess both requisite knowledge and character, the *Gordon* court concluded that, since the applicant had not been excluded due to a challenge to his good character, the residence requirement "serves no purpose other than to deny persons the right to pursue their professional career objectives because of parochial interests." 422 N.Y.S.2d at 645, 397 N.E.2d at 1313. The court also noted that the state was "at a complete loss to justify the blanket discrimination against nonresidents." 422 N.Y.S.2d at 645, 397 N.E.2d at 1313. After examining several reasons frequently asserted in support of residency requirements (such as the necessity to observe and evaluate an applicant's character, the interest of the state in controlling the attorneys who appear in its courts, the interest of the state in ensuring that the members of its bar are well-acquainted with local law and customs), the court concluded that less restrictive alternatives exist by which the state could accomplish its objectives without precluding nonresidents from practicing. 422 N.Y.S.2d at 645–46, 397 N.E.2d at 1313–14.

provided "a promising basis for future attacks on state residency requirements." Note, 92

Harv.L.Rev. 1461, 1464 (1979).

Another case which merits detailed mention is *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980), which involved facts very similar to the present case. In that case the Alaska Supreme Court ruled that the Alaska Bar Association requirement that an applicant be domiciled in Alaska at least thirty days prior to the bar examination violated the plaintiff's rights under the privileges and immunities clause of the United States Constitution.[4] The plaintiff, Ms. Sheley, was working as a law clerk for a federal district judge in Texas and planning to move to Alaska in June of 1980 to practice law, applied to take the February 1980 bar examination. She notified the Alaska Bar Association that she would be unable to meet the thirty-day residency requirement because she could not move to Alaska until after her clerkship, and that it would be financially impossible for her to take the July examination, as to do so would in effect prevent her from practicing law and earning a living for at least four months. The Board of Governors denied her application because she could not meet the residency requirement. 620 P.2d at 641.

The Alaska court recognized that the "practice of law by qualified persons is a 'fundamental right' triggering scrutiny under the privileges and immunities clause." 620 P.2d at 643.[5] Since the practice of law qualifies as a "fundamental right," the residency requirement, which clearly discriminated against nonresidents, could only be upheld if the state could show valid independent reasons to justify disparate treatment and that the degree of discrimination bears a close relationship to those reasons—

the test first developed in *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), and recently confirmed in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

The Alaska Bar Association contended that a substantial reason existed to support the rule in that the rule afforded an opportunity to investigate an applicant's moral character and qualifications. The existence of a legitimate state interest on its own is insufficient; there must be a "substantial relationship" between the means chosen and the legitimate objectives to be achieved. The *Sheley* court concluded that the discrimination worked by the rule against nonresidents did not bear a substantial relationship to the end sought by the bar association since less restrictive means exist that would achieve the legitimate objectives. 620 P.2d at 645. Furthermore, the short residence period would be insufficient for the assessment of an applicant's character because information concerning fitness and character would be found outside of Alaska. One less restrictive means noted by the Alaska court involves the nationwide investigatory service of the National Conference of Bar Examiners. 620 P.2d at 645, *citing Keenan v. Board of Law Examiners*, 317 F.Supp. 1350, 1360 (E.D.N.C.1970).

In summation, the *Sheley* court concluded that, although the efforts of the bar association to insure that bar applicants be morally qualified to practice law was commendable, the association could not abridge applicants' constitutional rights in pursuit of those goals. The court thus concluded that

---

**4.** The plaintiff also contended that the restriction violated the equal protection clause. Since the court concluded that the residency rule violated the privileges and immunities clause, it did not determine the equal protection challenge. 620 P.2d at 641, n. 4.

**5.** The court observed that the United States Supreme Court in *Baldwin v. Montana Fish and Game Commission*, quoted with approval the list of fundamental rights which had been compiled in 1823 in *Corfield v. Coryell*, the first major case decided under the privileges and immunities clause:

[Fundamental rights include the] right of a citizen of one state to pass through, or to reside in any other state for purposes of trade, agriculture, *professional pursuits* or otherwise; to claim the benefit of the writ of habeas corpus, to institute and maintain actions of any kind in the courts of the state; to take, hold and dispose of property, either real or personal[.]

620 P.2d at 643, *quoting Baldwin v. Montana Fish and Game Commission*, 436 U.S. 371, 384, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354, 365 (1978), *quoting Corfield v. Coryell*, 6 Fed.Cas.No. 3,230 pp. 546, 552 (C.C.E.D.Pa.1823) (emphasis added in *Sheley* case).

"[w]e believe that the bar residency requirement is the sort of economic protectionism that the privileges and immunities clause of the United States Constitution was designed to prevent." 620 P.2d at 646.

Having reviewed these, and other, cases, this court concludes that the case before it falls in line with the rationale and conclusions of the *Gordon* and *Sheley* cases. A rule that denies an applicant the right to take the Alabama bar examination for no reason other than that he does not reside in Alabama fosters economic protectionism and parochial interests in violation of the privileges and immunities clause of the United States Constitution and thus cannot stand. It is not just the administrative interpretation implementing a three-week residence requirement that this court deems obnoxious; the requirement of Rule IV itself that one certified to take the examination must be a bona fide resident of Alabama without respect to the time period for such residence violates the privileges and immunities clause. *See Hicklin v. Orbeck*, 437 U.S. 518, 526–28, 98 S.Ct. 2482, 2486–88, 57 L.Ed.2d 397, 403–06 (1978).

The Alabama State Bar Association has not attempted to justify the residence requirement by asserting that it fosters some compelling state interest. Instead, the Bar merely contends in its brief that the Alabama residency requirement "is one of the most liberal of any state in the United States." Perhaps the Alabama rule may be classified as "liberal;" that does not prevent it from violating the constitutional rights of nonresident applicants. The Supreme Court indicated such to be true in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), when it declared unconstitutional an Alaska statute which favored the hiring of only Alaska residents for work in oil fields in which the state had an interest. The Alaska Supreme Court declared the one-year durational residency requirement unconstitutional, but

held that the act's general preference for Alaska residents was constitutionally permissible. After examining the privileges and immunities clause in detail, the Supreme Court concluded that the residence requirement—even without a durational time period—did not meet constitutional muster. Even assuming that Alaska had a legitimate interest in trying to alleviate its unemployment problem, there was no showing that nonresidents presented "a peculiar source of the evil" the so-called "Alaska Hire" statute was enacted to remedy, and therefore the discrimination against nonresidents could not withstand scrutiny under the privileges and immunities clause. 437 U.S. at 526, 98 S.Ct. at 2487, 57 L.Ed.2d at 405, *citing Toomer v. Witsell*, 334 U.S. 385, 398, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460 (1948).

Likewise, there has been no attempt made to show that nonresidents pose a "peculiar source of evil" to the ideal of maintaining a bar of qualified attorneys. Further, the requirement that candidates for the bar be residents of Alabama does little to ensure that applicants are qualified since the bar association does not utilize the period of residency to observe and evaluate candidates. Additionally, the Alabama State Bar Association employs the nationwide investigatory services of the National Conference of Bar Examiners to obtain information on the character and fitness of nonresident applicants. The use of this service has been often suggested by courts as a less restrictive alternative for determining the fitness of bar applicants.[6] Presumably, the additional expense of the use of this service forms the basis of the extra fee which nonresidents must pay for the privilege of sitting for the Alabama bar examination. The information supplied by the National Conference of Bar Examiners provides a much stronger basis for evaluating a nonresident applicant's qualifications to practice law than can be obtained by requir-

---

6. E. g., *Keenan v. Board of Law Examiners*, 317 F.Supp. 1350 (E.D.N.C.1970); *Sheley v. Alaska Bar Association*, 620 P.2d 640, 645 (Alaska 1980).

ing an out-of-state resident to reside in Alabama for any period of time.

The invidious discrimination against non-residents worked by this rule bears no relationship to the legitimate state interest of ensuring the competency and rectitude of members of its bar, and thus fails to meet the test for scrutiny under the privileges and immunities clause. *See, Toomer v. Witsell*, 334 U.S. 385, 398–99, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460 (1948); *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952); *Hicklin v. Orbeck*, 437 U.S. 518, 526, 98 S.Ct. 2482, 2487, 57 L.Ed.2d 397, 405 (1978). Further, less restrictive—and more effective—means exists for ensuring the quality of applicants to the bar, such as utilization of the services of the National Conference of Bar Examiners, which would not preclude a nonresident from practicing his chosen profession in the state of Alabama merely because of his place of residence. The court finds that the residency requirement constitutes a protectionistic trade barrier for the economic protection of local interests. The only compelling state interest in a requirement of mere residency appears to be the creation of an oligopoly for the benefit of its residents. Such action by one state falls precisely within the category of state action which the framers of our Constitution sought to eradicate with the privileges and immunities clause. The purposes of the clause have been variously stated as to establish a "norm of comity," *Austin v. New Hampshire*, 420 U.S. 656, 660, 95 S.Ct. 1191, 1194, 43 L.Ed.2d 530 (1975), to prevent "a state from discriminating against citizens of other states in favor of its own," *Hague v. CIO*, 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423 (1939), to foster nationalism and assure equality of citizens within any state and thus "to constitute the citizens of the United States one people," *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180, 19 L.Ed. 357 (1869), cited in *Baldwin v. Montana Fish and Game Commission*, 436 U.S. 371, 380–81, 98 S.Ct. 1852, 1858–59, 56 L.Ed.2d 354, 363 (1978). In short, the essence of the

clause "prevents a State from discriminating against nonresidents merely to further its own parochial interests or those of its residents," *Gordon v. Committee on Character and Fitness*, 422 N.Y.S.2d 641, 643, 397 N.E.2d 1309, 1311 (1979), *citing Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

■ Whatever may be the ultimate reach of the expanded and reinvigorated privileges and immunities clause, it is well settled that a state may not premise one's right to practice his chosen occupation within its borders solely on residence. This clause thus precludes a state from imposing discriminatory burdens on nonresidents, whether by means of artificial trade barriers in the form of unequal licensing fees, as in *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948), or employment preferences granted only to residents, as in *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978).

Therefore, the court finds that the requirement that all certified candidates for admission to the Alabama State Bar Association be bona fide residents of the state egregiously discriminates against nonresidents and thwarts the purposes of the privileges and immunities clause. Accordingly, this court concludes that the residence requirement of the Alabama State Bar Association is unconstitutional, and that the defendants should be permanently enjoined from enforcing that provision of its Rules Governing Admission to the Alabama State Bar.