Re: Luther M. STALLAND

v.

SOUTH DAKOTA BOARD OF BAR EXAMINERS; Thomas E. Simmons, Thomas C. Adam, Robert B. Frieberg, all members of the South Dakota Board of Bar Examiners; Supreme Court of the State of South Dakota; Roger L. Wollman, Francis G. Dunn, Robert E. Morgan, Jon Fosheim, Frank E. Henderson, all Justices of the Supreme Court of South Dakota.

Civ. No. 81–3046.

United States District Court,
D. South Dakota.

Jan. 15, 1982.

---

7. The ruling requested by Amreco on four individual claims would *a fortiori* be premature.

Wm. J. Srstka, Jr., Pierre, S. D., K. Peter Stalland, Minneapolis, Minn., for plaintiff.

Douglas E. Kludt, Asst. Atty. Gen., Robert C. Riter, Pierre, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

This action concerns the constitutional validity of S.D.C.L. 16–16–2 and 16–16–7 which provide that an applicant for admission to practice law in South Dakota must be a resident of this state.[1] Luther Stalland, the plaintiff, claims the residency requirement violates the privileges and immunities clause of article IV, section 2 of the Federal Constitution, and both the due process and equal protection clauses of the fourteenth amendment to the Federal Constitution. Plaintiff requests declaratory and injunctive relief. Jurisdiction exists under 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1983.

---

1. S.D.C.L. 16–16–2: "An applicant for admission to practice as an attorney or counselor at law in this state must be a citizen of the United States, a resident of this state, at least eighteen years of age, be a person of good moral character and satisfy the requirements of the rules applicable to him."

S.D.C.L. 16–16–7: "A nonresident who otherwise meets the requirements of this chapter shall be permitted to take the examination upon furnishing satisfactory proof to the board of bar examiners of his intention to become a resident of this state; however, no certificate of admission to practice shall be issued unless such applicant shall furnish to the court within ninety days from the date of such examination satisfactory proof that his actual residence in this state has been established. The court, for good cause shown, may waive the failure to establish residence within the time prescribed."

The defendants in this action include the South Dakota Board of Bar Examiners, the individual members of the Board, the South Dakota Supreme Court, and the individual justices of the Court. The South Dakota Bar Association also participated as *amicus curiae*.

By agreement of the parties, the merits of this controversy are before this Court on plaintiff's motion for summary judgment. The material facts are uncontroverted and only a question of law remains to be decided. Although no evidentiary hearing was held, the defendants submitted testimony by affidavit concerning their justifications for the residency requirement. For the reasons stated in this memorandum, this Court grants plaintiff's motion for summary judgment.

## FACTS

Plaintiff is a resident of Minnesota, where he has practiced law for nearly thirty years. He is a member of the Bar of the state of Minnesota and practices before the state courts and the United States District Court of Minnesota. Plaintiff intends to engage in the multistate practice of law. While maintaining his Minnesota residency and practice, plaintiff seeks to obtain a license to practice law in South Dakota.

On November 12, 1980, plaintiff applied for admission to practice law in South Dakota. Defendant Board of Bar Examiners denied this application on March 21, 1981. Plaintiff requested the defendant Supreme Court to review the Board's decision under S.D.C.L. 16–16–16. On July 23, 1981, the Supreme Court sustained the Board's decision to deny plaintiff's application. Plaintiff then initiated this action.

The South Dakota bar residency requirement, S.D.C.L. 16–16–2, clearly discrimi-

nates against nonresidents. Defendants do not dispute this fact. The residency requirement denies a nonresident attorney, who might be otherwise eminently qualified, the right to practice law on a multistate basis, perhaps specializing in a narrow area of the law. Further, S.D.C.L. 16–16–2 burdens the practice of law by attorneys employed by multistate corporations. *Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979). Defendants did not dispute plaintiff's moral fitness or legal competence but denied plaintiff's application based solely upon the residency requirement. This Court, therefore, will address plaintiff's principal challenge to S.D.C.L. 16–16–2, based on the privileges and immunities clause of article IV, § 2.[2]

## I.

The United States Constitution, article IV, § 2, provides: "The citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several states." Essentially, the clause forbids a state to discriminate against citizens of other states in favor of its own citizens.[3] By "making noncitizenship or nonresidence an improper basis for locating a special burden, [the clause] implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism," *Austin v. New Hampshire*, 420 U.S. 656, 659, 662, 95 S.Ct. 1191, 1193, 1195, 43 L.Ed.2d 530 (1975). Thus, the privileges and immunities clause "establishes a norm of comity (cites omitted) that is to prevail among the States with respect to their treatment of each other's residents." *Hicklin v. Orbeck*, 437 U.S. 518, 523, 98 S.Ct. 2482, 2486, 57 L.Ed.2d 397 (1978).

---

2. Since the court concludes that S.D.C.L. 16–16–2 and S.D.C.L. 16–16–7 violate the privileges and immunities clause, it need not determine if the statutes also violate the equal protection and due process clauses. *See, Hicklin v. Orbeck*, 437 U.S. 518, 534, n. 19, 98 S.Ct. 2482, 2492, n. 19, 57 L.Ed.2d 397 (1978). In *Golden v. State Board of Law Examiners*, 452 F.Supp. 1082 (D.Md.1978), *vacated*, 614 F.2d 943 (4th

Cir. 1980), the district court cited many of the cases which determined the validity of Bar residency requirements under other constitutional provisions.

3. *The Constitution of the United States of America: Analysis and Interpretation*, S.Doc.No. 92–82, 92d Cong., 2nd Sess. (1972) at p. 832.

Article IV, § 2, does not identify the subjects with respect to which equality of treatment is required. Admittedly, not all discrimination against nonresidents is prohibited. Concerning the right to vote, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), to hold public office, *Kanapaux v. Ellisor*, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974), to receive some state services, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), a state may discriminate on the basis of residency. These activities significantly relate to the separate sovereignty of each state. Discrimination against nonresidents with respect to these "privileges" or "rights" does not frustrate the goal of national unification expressed in the clause.[4] Furthermore, the clause does not preclude residency distinctions concerning interests or rights which cannot be deemed "fundamental,"[5] basic or essential to the maintenance of the Union. *Baldwin v. Fish and Game Commission of Montana*, 436 U.S. 371, 388, 98 S.Ct. 1852, 1862, 56 L.Ed.2d 354 (1978). In *Baldwin*, for example, the Supreme Court held that discrimination against nonresidents concerning elk hunting in Montana did not threaten a basic right. *See also, State v. Kemp*, 73 S.D. 458, 44

N.W.2d 214 (1950), *appeal dismissed*, 340 U.S. 923, 71 S.Ct. 498, 95 L.Ed. 667 (1951).[6]

This Court concludes the practice of law in South Dakota is a fundamental or basic right protected under the clause from unjustified discrimination on the basis of residency. Article IV, § 2 plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging in lawful commerce, trade or business without molestation. *Ward v. Maryland*, 12 Wall 418, 430, 20 L.Ed. 449 (1871); *Toomer v. Witsell*, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). In *Hicklin*, for example, the Supreme Court struck down the Alaska Hire law which granted to Alaska residents a preference for employment in jobs arising in the state's oil and gas industry. 437 U.S. at 531, 98 S.Ct. at 2490. The privileges and immunities clause clearly extends unique protection to nonresidents who wish to engage in their chosen occupation and earn a livelihood within the state on an equal basis with residents. Since S.D.C.L. 16–16–2 discriminates against nonresidents who seek to practice their occupation in the state, the statute therefore is subject to scrutiny under the privileges and immunities clause.[7]

4. Note, *A Constitutional Analysis of State Bar Residency Requirements Under the Interstate Privileges and Immunities Clause of Article IV*, 92 Harv.L.Rev. 1461, 1476 (1979).

5. Historically, art. IV, § 2, protected only certain "fundamental rights," including the right to pass through any state for purposes of engaging in "professional pursuits." *Corfield v. Coryell*, 6 Fed.Cas. 546 (C.C.E.D.Pa.1825) (No. 3230). The practice of law was one of the few traditional "professional" pursuits. Although the modern role of the fundamental rights doctrine remains unclear, this Court concludes the practice of law falls within the range of interests historically protected by the clause. Because many transactions which create the need for legal services are interstate transactions, the practice of law is now considered a "commercial" activity. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 783–784, 95 S.Ct. 2004, 2011–2012, 44 L.Ed.2d 572 (1975). Just as "anticompetitive activities of lawyers may exert a restraint on commerce ...," *Goldfarb*, 421 U.S. at 788, 95 S.Ct. at 2013, so may anticompetitive state rules regarding admission

to practice law. Consequently, unjustified state discrimination against nonresidents with respect to the practice of law impermissibly burdens individuals engaged in commerce and frustrates one goal of the clause-to create a national economic union.

6. Other examples of "rights" not considered "fundamental" include access to a university education at resident tuition rates, *Rosenstock v. Board of Governors of the University of North Carolina*, 423 F.Supp. 1321 (M.D.N.C. 1976), and mooring privileges at a recreational boat harbor. *Hawaii Boating Ass'n v. Water Transportation Facilities Division*, 651 F.2d 661 (9th Cir. 1981).

7. In *Gordon* the court concluded "the practice of law is analogous to any other occupation in which an independent agent acts on behalf of a principle." 397 N.E.2d at 1312. Indeed, defendants did not attempt to distinguish the practice of law from other commercial-livelihood interests traditionally protected under article IV, § 2.

The privileges and immunities clause bars discrimination against nonresidents "where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other states." *Toomer*, 334 U.S. at 396, 68 S.Ct. at 1162. Accordingly, we must analyze defendants' justifications for maintaining the discriminatory burden of S.D.C.L. 16–16–2. First, the state interests served by the discrimination must be "substantial." That is, defendants must demonstrate that "non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer*, 334 U.S. at 398, 68 S.Ct. at 1163. If the governmental interest is substantial, and some degree of discrimination is permissible, "there must be a reasonable relationship between the danger represented by non-citizens, as a class, and the . . . discrimination practiced upon them." *Hicklin*, 437 U.S. at 526, 98 S.Ct. at 2487, *quoting Toomer*, 334 U.S. at 399, 68 S.Ct. at 1163. Professor Tribe concludes that this "substantial reason test" "permits disparate treatment of nonresidents, but only where the very fact of their nonresidence demonstrably creates problems for legitimate state objectives that cannot be remedied in less discriminatory ways." L. Tribe, *American Constitutional Law*, § 6–33, p. 410 (1978).

## II.

According to defendants, nonresident attorneys who practice in South Dakota constitute a peculiar source of several evils which S.D.C.L. 16–16–2 was designed to avoid.

(1) *The evil of administrative inconvenience*: Defendants claim the residency rule protects the state's interest in minimizing its administrative and investigative workload. They argue that applications by nonresident attorneys burden the admission process; the practice of law by nonresident attorneys creates administrative and scheduling problems for state courts.

Defendants failed, however, to demonstrate that nonresidents constitute "a peculiar source" of the evil of "administrative inefficiency." Defendant's brief, p. 23.

More important, the Supreme Court indicated administrative convenience may not be a substantial interest sufficient to justify a residency requirement. *Sosna v. Iowa*, 419 U.S. 393, 406, 95 S.Ct. 553, 560, 42 L.Ed.2d 532 (1975). This Court agrees that the convenience and efficiency of local courts are not "substantial reasons" for permitting a state completely to exclude nonresidents from admission to the bar. *Gordon*, 397 N.E.2d at 1313; *Keenan v. Board of Law Examiners of the State of North Carolina*, 317 F.Supp. 1350, 1360 (E.D.N.C. 1970).

(2) *The evil of admitting attorneys who are unfamiliar with local customs, attitudes, laws and procedures*: First, defendants claim out-of-state attorneys often cannot attend to the "rapidly changing" laws of South Dakota. Defendants also believe nonresident attorneys are ignorant of the general attitudes, personalities and opinions of South Dakota judges and prospective jurors. For these reasons, defendants conclude nonresident attorneys cannot effectively advise and serve clients. This Court disagrees.

There is no dispute that each state has a valid interest in assuring that attorneys admitted to the Bar are legally competent and ethically fit. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238, 77 S.Ct. 752, 755, 1 L.Ed.2d 796 (1957). Accordingly, the requirement of a bar examination serves to determine an applicant's knowledge of state substantive law and procedural rules. But plaintiff was not denied admission because he lacked the requisite character or knowledge of the law. Defendants excluded him based solely upon his residence.

First, this Court must reject the defendants' unfounded and conclusory assertion that nonresident attorneys cannot keep abreast of South Dakota's "rapidly changing" laws. Second, defendants failed to demonstrate a link between legal competency and familiarity with the attitudes of local judges and jurors. If ignorance of judges' attitudes is an evil which the state may legitimately address, then this Court is

certain that the defendants failed to show nonresidents constitute a "peculiar source" of the evil. Additionally, "we find no rational relationship between 'fitness or capacity to practice law' and a knowledge of 'local custom.' Neither legal competence nor ethical fitness depends upon cultural provincialism." *Keenan*, 317 F.Supp. at 1359.

Defendants also appear to adopt inconsistent positions. Although defendants claim a substantial interest in licensing attorneys who understand "local customs," defendants do not require continuing residency or practice by the attorneys they admit. Under current rules, an attorney, once admitted, may immediately move out of the state and yet retain his South Dakota license. Such an attorney may never learn local customs or attitudes since this knowledge is gleaned, most often, only after the attorney begins an in-state practice. Therefore, even if defendants' showing is accepted as sufficient to indicate nonresidents are a "peculiar source of evil," S.D. C.L. 16–16–2 still fails to pass constitutional muster. The discrimination the statute works against nonresidents does not bear a "substantial relationship" to the particular evil they are said to present. *Hicklin*, 437 U.S. at 527, 98 S.Ct. at 2488.

(3) *The evil of admitting attorneys not subject to the direct control or supervision of local courts*: The defendants' primary justifications for the residency requirement focus upon the need for court control over the attorneys who appear in local courts. Since nonresident attorneys live beyond the physical jurisdiction of state courts, they arguably would not be subject to service of process, bar discipline or malpractice investigation. Defendants' also assert proper administration of justice requires resident attorneys who may promptly respond to motion calls and court directions. Finally, defendants contend nonresident attorneys would not be available to fulfill their *pro bono* obligation to the state or to accept criminal defense appointments.[8]

The state surely has a valid interest in regulating and controlling the conduct of the attorneys it admits to practice. This Court concludes, however, that the degree of discrimination practiced upon nonresidents under S.D.C.L. 16–16–2 is not reasonably related to the danger nonresidents represent, as a class. There are numerous less discriminatory means by which defendants can protect the state's valid interest in maintaining control of attorneys.

The State could require nonresident attorneys to maintain an office in South Dakota. The office could be staffed by someone authorized to act as an agent for service of process, or the State could require the nonresident to designate the Clerk of the State Supreme Court as his or her agent for service of process.[9] The State may expand the requirement of association with local counsel to the practice in South Dakota by all nonresident members of the Bar. Various conditional licensing systems have been suggested by which the initial residence requirement would be waived and a permanent license granted only upon satisfaction of one or more alternatives to simple residency.[10] Even if a statute utiliz-

---

8. This Court need not consider the *pro bono* obligation of nonresidents or their duty to accept criminal appointments. Defendants failed to indicate how it now requires nonresident members to meet these obligations. Further, this Court cannot find any authority regarding *pro bono* practice which requires an attorney to meet this obligation by serving in-state clients.

9. Minn.Stat.Ann. vol. 52, Rules of Supreme Court for Admission to the Bar, Rule II B. The Minnesota rule is exemplary and worth quoting: "Prior to admittance an applicant must be a resident of this state; *or* maintain an office in this state; *or* designate the Clerk of the Su-

preme Court as his or her agent for the service of process for all purposes." (Emphasis added.)

10. Note, *The Future of State Bar Residence Requirements Under the Privileges and Immunities Clause*, 26 S.D.L.Rev. 79, 89 (1981). Residency requirements are simple or durational. A simple residency requirement demands actual residence at a specified date, either the date of application, examination or admission. A durational requirement means the applicant must be present in the jurisdiction for a fixed period prior to application, admission or examination. *Id.* at 79.

ing one or more of these alternatives might be permissible, the across-the-board exclusion of nonresidents under S.D.C.L. 16–16–2 clearly is not.

Since all applicants to the South Dakota practice must be Bar members, S.D.C.L. 16–16–1, resident and nonresident members should be equally subject to bar disciplinary procedures. Because South Dakota has a reciprocal discipline statute, S.D.C.L. 16–19–72 to 74, it is arguable that nonresident members are subject to the greater scrutiny of courts and attorneys in more than one state.

It should be noted, for the record, that several attorneys' affidavits suggested an additional justification for the residency requirement. These affidavits stated S.D.C.L. 16–16–2 provides an opportunity for the Bar to observe and determine the moral fitness and character of each applicant. Defendants, however, disclaimed any interest in raising this argument. Defendants' Brief, at p. 20.

### III.

Following the Supreme Court's decision in *Hicklin*, courts in three states held Bar residency requirements unconstitutional under the privileges and immunities clause. *Gordon, supra* (the New York rule); *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980); *Strauss v. Alabama State Bar*, 520 F.Supp. 173 (N.D.Ala.1981). Defendants distinguish these decisions from the present case in several respects. First, they contend *Gordon* and *Sheley* concerned durational residency rules, not simple residency as in S.D.C.L. 16–16–2. In *Gordon*, however, the applicant did not intend to reestablish New York residency. Consequently, he was not burdened by the specific durational aspects of the New York rule, nor did the court limit its decision to the durational aspects. In *Sheley*, the Alaska

Bar Association claimed its durational rule was not governed by *Hicklin* since the Supreme Court there struck down a simple residency requirement. 620 P.2d at 644, n. 26. The Alaska Supreme Court rejected, for purposes of analysis under article IV, § 2, any distinction based upon simple or durational residency.[11] This Court agrees with that conclusion.

Next, defendants contend several decisions of the Supreme Court require this Court to uphold the constitutionality of S.D.C.L. 16–16–2. For example, in *Wilson v. Wilson*, 416 F.Supp. 984 (D.Or.1976), *aff'd mem.* 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 768 (1977), the Supreme Court summarily affirmed a district court decision which upheld the Oregon simple residency requirement for Bar admission. *Wilson*, however, was decided before the Supreme Court, in *Hicklin* and *Baldwin*, reaffirmed the role of article IV, § 2 in reviewing state discrimination against nonresidents. The district court never addressed the Oregon residency rule in light of the standards set out in *Hicklin*. Nor does this Court consider itself bound by the Supreme Court's summary affirmance of *Wilson*. Too often the Supreme Court has explained that the precedential effect of a summary affirmance is limited and can extend no farther than the precise issues presented and necessarily decided by those actions. *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). A summary disposition affirms only the judgment of the court below, *Fusari v. Steinberg*, 419 U.S. 379, 391–392, 95 S.Ct. 533, 540–541, 42 L.Ed.2d 521 (1975), and "no more may be read into [the court's] action than was essential to sustain that judgment. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). Since the district court in *Wilson* did not mention the privileges and im-

---

11. In addition to *Hicklin*, the Supreme Court has stricken other simple residency requirements. *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *see also, Consumers Union of United States, Inc. v. Albright*, 427 F.Supp. 840 (S.D.N.Y.1977). The district court held article IV, § 2 was not violated by a stat-ute which required simple residency of purchasers of "savings bank life insurance." The Supreme Court vacated the district court's decision and remanded the case for further consideration in light of *Hicklin*. 438 U.S. 901, 98 S.Ct. 3117, 57 L.Ed.2d 1144 (1978).

munities clause, the precise issue now before this Court was neither adequately presented to nor necessarily decided by the Supreme Court. Although the *Wilson* court considered an applicant's right to travel, that right is not based upon any particular constitutional provision. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). A decision based upon the right to travel, therefore, should not be deemed determinative of issues narrowly raised under article IV, § 2.[12]

■ This Court does not dispute the right of defendants to require high standards of qualification, such as good moral character, or legal proficiency, before they admit an applicant to the Bar. *Schware v. Board of Bar Examiners*, 353 U.S. at 239, 77 S.Ct. at 756. No state, however, may exclude a person from the practice of law in a manner or for reasons that contravene constitutional guarantees. *Id.* It is now well settled that the privileges and immunities clause forbids a state to "premise one's right to practice his chosen occupation within its borders solely on residence." *Strauss v. Alabama State Bar*, 520 F.Supp. at 179. For these reasons, this Court holds that S.D.C.L. 16–16–2 and 16–16–7 invidiously discriminate against nonresidents in violation of the privileges and immunities clause of article IV, § 2. Defendants failed to demonstrate that the practice of law in South Dakota by nonresident attorneys would create substantial problems which the state may legitimately address. Nevertheless, even though one or more of the reasons offered to support S.D.C.L. 16–16–2 could be deemed "substantial," this Court holds that there is no reasonable relationship between the danger represented by nonresidents, as a class, and the discrimination practiced upon them. S.D.C.L. 16–16–2 clearly is not "closely tailored" to avoid the dangers nonresidents are said to represent.

Therefore, this Court grants plaintiff's motion for summary judgment as follows. The present South Dakota Bar residency requirement established by S.D.C.L. 16–16–2 and 16–16–7 is unconstitutional and the defendants shall be permanently enjoined from enforcing those provisions. This Court shall enter its order and judgment accordingly, and shall further order the defendants to reconsider the plaintiff's application for admission in light of the Court's decision. The foregoing shall constitute the Court's findings of fact and conclusions of law.

---

12. Defendants also cite *Canfield v. Wisconsin Board of Attorney's Professional Competence*, 490 F.Supp. 1286 (W.D.Wis.1980), vacated, 645 F.2d 76 (7th Cir. 1981), and *Peel v. Supreme Court of Missouri*, No. 80–1792 (8th Cir. April 9, 1981), vacated unpublished decision of District Court for Eastern District of Missouri, dated July 11, 1980. In these cases the district courts upheld the Bar residency rules in Wisconsin and Missouri, respectively. Neither of these decisions are binding precedent for this Court. Both cases were vacated for mootness. The district court decision in *Canfield* became moot after the Wisconsin Supreme Court repealed its simple residency Bar admission requirement. *Peel* became moot after the Supreme Court of Missouri decided the applicant qualified for admission to the Bar, after all.

Finally, although cited by defendants, this Court cannot follow decisions affirming state requirements for the admission of attorneys *pro hac vice. Brown v. Supreme Court*, 359 F.Supp. 549 (E.D.Va.1973) aff'd mem., 414 U.S. 1034, 94 S.Ct. 533, 38 L.Ed.2d 327 (1973). These decisions do not address the constitutionality of residency requirements for general admission to the Bar, under the privileges and immunities clause.