**Francis HELMINSKI, Plaintiff,**

v.

**The SUPREME COURT OF COLORADO; The Honorable William H. Erickson, Chief Justice; The Honorable Jean E. Dubofsky; The Honorable Howard M. Kirshbaum; The Honorable George E. Lohr; The Honorable William D. Neighbors; The Honorable Joseph R. Quinn; The Honorable Luis D. Rovira, Justices; Individually and as Justices of the Supreme Court of Colorado, Defendants.**

**Civ. A. No. 83–JM–2054.**

United States District Court, D. Colorado.

Feb. 28, 1985.

Mark W. Gerganov, Denver, Colo., for plaintiff.

Cheryl J. Hanson, Asst. Atty. Gen., Denver, Colo., for defendants.

## ORDER

JOHN P. MOORE, District Judge.

This matter is before me on cross-motions for summary judgment. The issues have been fully briefed and the case is ready for determination. Jurisdiction lies pursuant to 28 U.S.C. § 1343. The question presented is whether Colorado can impose a residency requirement for admission to the state bar in light of the Privilege and Immunities Clause of Article IV of The United States Constitution. After consideration of all the arguments raised, I have concluded the question must be answered in the negative.

The facts relevant to this case are undisputed. The parties disagree only with respect to the legal conclusions to be drawn from the facts. Plaintiff is a resident of Michigan and a member of the Michigan State Bar. Defendants are the Supreme Court of Colorado and its justices in their official and individual capacities. Plaintiff sat for the Colorado bar examination in July, 1983, and was notified in October, 1983, that he had passed the exam. He subsequently wrote to the Clerk of the Colorado Supreme Court to inquire whether the court would waive the residency requirement for admission contained in Colo.R.Civ.P. 201.14(1). The rule states, in pertinent part, that "no applicant shall be admitted to the Bar of the State until such time as he or she has become a resident of Colorado...." The Clerk responded that the Court would not waive the residency requirement, and that those seeking admission after examination have 18 months from the date the results are announced to establish the residency requisite to admission. Defendants admit that plaintiff meets all the requirements for entry to the bar except the residency requirement. Plaintiff's amended complaint seeks a permanent injunction to enjoin the enforcement of the residency clause of Rule 201.-14(1) on the grounds that the residency requirement is unconstitutional.

Defendants raise threshold issues. They claim the maintenance of this action is barred by the operation of the doctrine of judicial immunity and by this court's lack of authority to review final judgments of a state court in judicial proceedings. There are two kinds of constitutional attacks which might be pursued by an unsuccessful bar applicant: "The first is a constitutional challenge to the state's general rules and regulations governing admission; the second, is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission." *Doe v. Pringle,* 550 F.2d 596 (10th Cir.1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977). In the first type of attack, federal district courts may assert jurisdiction under 28 U.S.C. § 1343 to insure that generally applicable rules of procedure do not impinge on constitutionally protected rights. At the same time, a state court's decision on an individual application may not be disturbed in an original suit in federal district court. In exercising its judgment on an individual petition, a state supreme court performs a judicial act, *In re Summers,* 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945), reviewable only by the United States Supreme Court on certiorari to the state court. *MacKay v. Nesbett,* 412 F.2d 846 (9th Cir.) *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). Because a federal district court does not sit as an appellate court, it lacks jurisdiction to review state court actions denying individual admissions to the bar, even though the denial allegedly involves deprivation of constitutional rights. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 736, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641

(1980); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

■ In this case, it is clear that the plaintiff states a general constitutional challenge to a specific regulation governing bar admission, alleging it infringes on liberties guaranteed by the Privileges and Immunities Clause. He does not seek review of a state court's adjudication of his specific application for admission. Accordingly, I conclude that the attack is cognizable in this court.

The thrust of plaintiff's complaint is that Colorado's residency requirement improperly discriminates against nonresidents in violation of the Privileges and Immunities Clause. Because the regulation operates to deprive nonresident attorneys of the opportunity to earn a livelihood in this state, plaintiff urges that the analysis set out by the Supreme Court in *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978) is applicable, and he concludes the regulation falls under such review. In answer, defendants argue initially that because plaintiff failed to challenge the residency requirement before the state promulgating body prior to initiating this suit, this action is not an actual controversy over which this Court may exercise Article III jurisdiction. Defendants next argue that the *Hicklin* analysis is inapplicable in the instant case because of the special relationship between a sovereign state and lawyers authorized to practice within its borders. Finally, defendants urge that even if *Hicklin* is found to apply, the state has a "substantial reason" for treating nonresident bar applicants in a different manner than resident applicants. I will address these contentions in turn.

■ It is beyond dispute that admission of applicants to the bar of a state is a matter of local concern, governed in Colorado by rules and regulations promulgated by the state supreme court. It is equally clear, however, that federal courts have an obligation to exercise the jurisdiction granted by 28 U.S.C. § 1343 for the vindication of constitutional rights. Thus, a natural tension arises over the extent of a federal court's authority to meddle in what is ostensibly a state concern.

■ As a prelude, it is clear every inquiry under the Privileges and Immunities Clause must "be conducted with due regard for the principle that the states should have considerable leeway in analyzing local evils and in prescribing appropriate cures." *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). This caution is particularly appropriate here because the interest implicated is the state's interest in the regulation of its bar, a matter traditionally granted special deference by federal courts. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Further, I am philisophically disinclined in general to decide a matter of state concern before Colorado courts have had an opportunity to address the issue.

■ Upon reflection, however, I have identified two undeniable principles that operate to overcome my reticence to reach the merits of this suit. Initially, as a practical matter, because the highest court in Colorado is the promulgator of the rule and a party of this action, requiring the plaintiff to bring his case in state court first would be an apparent exercise in futility. More importantly, consistent with the foregoing discussion regarding jurisdiction, I must conclude that plaintiff has properly invoked the jurisdiction of this court over constitutional claims by stating a general constitutional challenge to the residency requirement.

■ Turning to the merits of the complaint, application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two step inquiry. As an initial matter, the Court must determine whether the regulation burdens one of those privileges and immunities protected by the Clause. Not all forms of discrimina-

tion against citizens of other states are constitutionally infirm.

Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally. *Baldwin v. Montana Fish & Game Commission,* 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354 (1978).

A state may discriminate on the basis of residency, for example, with respect to the right to vote, *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); the right to hold public office, *Kanapaux v. Ellisor,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974); and the right to receive some state services, *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). As a threshold matter, then, I must determine whether an out-of-state resident's interest in being able to practice law in the State of Colorado is sufficiently "fundamental" to the promotion of interstate harmony so as to "fall within the purview of the Privileges and Immunities Clause." *Baldwin v. Montana Fish & Game Commission,* 436 U.S. at 388, 98 S.Ct. at 1862.

■ It is clear the pursuit of a "common calling" is one of the most fundamental of those privileges protected by the Clause. *Baldwin v. Montana Fish & Game Commission,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978). Accordingly, it is well-settled that a state may not premise the right to practice one's chosen occupation within its borders solely on residence. Whether the discriminatory burden on nonresidents takes the form of unequal licensing fees, as in *Toomer v. Witsell,* 334 U.S. 385, 388, 68 S.Ct. 1156, 1158, 92 L.Ed. 1460 (1948), or employment preferences granted only to residents, as in *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), the Clause operates to make the burden unconstitutional.

Defendants urge, however, that because of the peculiar nature of the legal profession, residency requirements for state bar admission differ from similar requirements for other commercial or professional livelihoods. Defendants have not specifically articulated, nor can I contemplate, however, a valid reason why the practice of law should be treated any differently than other occupations for purposes of applying the Privileges and Immunities Clause. The Supreme Court has held that the practice of law is squarely outside the range of occupations implicating state sovereignty. *In re Griffiths,* 413 U.S. 717, 728–29, 93 S.Ct. 2851, 2858–59, 37 L.Ed.2d 910 (1973). Following in this vein, the majority of Courts that have addressed the issue have concluded that "despite its historical antecedents as a learned profession somehow above that of the common trades, [the practice of law] is but a species of those commercial activities within the ambit of the [Privileges and Immunities Clause]" *Gordon v. Committee on Character & Fitness,* 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979). *Accord, Strauss v. Alabama State Bar,* 520 F.Supp. 173 (D.Ala.1981); *Stalland v. South Dakota Board of Bar Examiners,* 530 F.Supp. 155 (D.S.C.1982); *Piper v. Supreme Court of New Hampshire,* 723 F.2d 110, 114–15 (1st Cir.1983), *appeal pending,* No. 83–1466, argued 10/31/84. It is of interest to note that the list of fundamental rights compiled in *Corfield v. Coryell,* the first major case decided under the Privileges and Immunities Clause, and adopted by the Supreme Court in *Baldwin,* included "the right of a citizen of one state to pass through, or to reside in any other state for purposes of trade, agriculture, *professional pursuits,* or otherwise; ..." *Baldwin v. Montana Fish & Game Commission,* 436 U.S. 371, 384, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354, *quoting Corfield v. Coryell,* 6 Fed.Cas.No. 3,230 p. 546 (C.C.E.D.Pa.1823). (Emphasis supplied.)

■ The conclusion that the disputed regulation discriminates against a protected privilege is only the first step of the inquiry. The privilege is not absolute and does not preclude discrimination where there is a "substantial reason" for difference in treatment. The inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them." *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). As part of this justification, nonresidents must be shown to "constitute a peculiar source of the evil at which the statute is aimed." *Id.* at 398, 68 S.Ct. at 1163. Put another way, the "substantial reason test permits disparate treatment, but only where the very fact of their nonresidence demonstrably creates problems for legitimate state objectives that cannot be remedied in less discriminatory ways." L. Tribe, *American Constitutional Law* § 6–33, p. 410 (1978).

The first justification asserted by the defendants for imposition of the residency requirement is a concern that a large and powerful out-of-state bar could exert significant influence over the decisions, practices, and makeup of a state's bar to the detriment of local needs and conditions. Because Colorado characteristically receives numerous applications from persons residing in distant states, a second justification for the rule is that the absence of physical proximity would make it difficult for the state to police out-of-state bar members and create an inconvenience for the courts of this state in terms of the out-of-state attorneys' availability. A final reason asserted is that the residency requirement is a reasonable method of avoiding the harmful consequences that could flow from a rule permitting persons who would never live in Colorado to become full-fledged members of the bar.

■ There is no dispute that Colorado has a valid interest in assuring that attorneys admitted to its bar are legally competent and ethically fit. *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752,

1 L.Ed.2d 796 (1957). However, in the case before me, defendants concede that plaintiff has demonstrated the requisite character and knowledge of the law to be admitted. The only basis for his exclusion is that his state of residence is Michigan and not Colorado. In this factual context, the asserted justifications fall under analysis.

■ The requirement of residency adds little to other measures of competency and professionalism since the period of residency is not used to observe and evaluate candidates. The response that the period of residency gives lawyers an opportunity to become familiar with local nuance and custom is of little weight when one realizes that any newly qualifying lawyer is likely to be hampered at the outset of his or her practice by lack of experience with the intricacies of state practice and procedure. *See Stalland v. South Dakota Board of Bar Examiners,* 530 F.Supp. at 159–60; *Piper v. Supreme Court of New Hampshire,* 723 F.2d at 116. The asserted justifications are further undercut by the knowledge that the residency rule does not require continuing residency as a condition of bar membership, but only residency at the time of admission, combined with an intent to remain. In effect, this permits bar members to leave the state immediately after admission without forfeiting their membership and undercuts the state's arguments that residency insures a measure of quality-control necessary to the fair and efficient administration of justice in this state. Indeed, the lack of a continued residency requirement really makes the distinctions the state would like to draw between resident and nonresident lawyers distinctions without difference. Finally, I note the obvious in concluding that a lawyer's professional integrity cannot be logically linked with the lawyer's state of residence. *In re Griffiths,* 413 U.S. at 724, 93 S.Ct. at 2856.

Even assuming that the asserted justifications warrant treating nonresident applicants for bar membership differently than resident applicants, there are clearly more

tailored means to guard against the specific dangers created by the admission of nonresidents. In other words, there is simply no basis for concluding that the state must exclude all nonresidents from admission in order to vindicate its undoubtedly legitimate interest in maintaining high professional standards. The state may and does impose continuing legal education requirements to insure a basic knowledge of local practice and rules. Standards for professional conduct and trial practice may be enforced by disciplinary committees. The Court may appoint the clerk for service of process, or use the Colorado long-arm statute for contempt proceedings to make disciplinary proceedings against nonresidents no more burdensome than against residents. Further, the Court might require that nonresidents maintain an office or affiliate themselves with lawyers within Colorado.

In light of the availability of these more tailored means to insure the state's legitimate interest in maintaining high professional standards, it is difficult not to conclude that the absolute exclusion of nonresidents is intended, in part, to protect the state market for legal services from outside competition. It is against precisely this kind of parochialism and economic protectionism that the Privileges and Immunities Clause is intended to protect.

Upon the foregoing, it is

ORDERED that defendants' motion for summary judgment is denied.

FURTHER ORDERED that plaintiff's motion for summary judgment is granted. The residency requirement established by Colo.R.Civ.P. 201.14(1) is unconstitutional and the defendants are permanently enjoined from enforcing the requirement.

FURTHER ORDERED that a hearing on plaintiff's application for attorney fees is set for one half hour on March 25, 1985 at 8:00 a.m. The parties may file concise briefs directed to the issue on or before March 18, 1985.